UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA

                    Plaintiff,                            **ORDER**

         -against-                              **21-MAG-5195 (JW)**

SUNE GAULSH,

                    Defendant.
------------------------------------------------------------------X

**JENNIFER E. WILLIS, United States Magistrate Judge:**

Before the Court is defendant Sune Gaulsh's ("Mr. Gaulsh") motion to dismiss the Government's complaint and quash his arrest warrant. Dkt. No. 20. For the following reasons Defendant's motion is **GRANTED**.

## FACTS[1]

Mr. Gaulsh, a citizen of Denmark, first met Michelle Mascioli ("Ms. Mascioli") around 2009. They had a child, L.G., who was born in 2011. They separated in 2013 and entered into a parenting plan ordered by a New York State Family Court in 2014. On July 9, 2018, the Family Court granted Mr. Gaulsh sole custody of J.G. and gave Ms. Mascioli supervised visitation.

After several years of housing instability, Ms. Mascioli secured a new home and on November 10, 2020, the Family Court granted Ms. Mascioli's request to have "extended overnight parenting time" with L.G. at her residence from November 14, 2020 to December 4, 2020. Mr. Gaulsh did not drop J.G. off at Ms. Mascioli's residence on November 14, 2020, and on November 16, 2020, the Family Court issued an order

---

[1] The facts are pulled from the complaint and briefing.

1

"suspending [Mr. Gaulsh's] custody rights," "awarding temporary custody to [Ms. Mascioli]," and issued a "writ of habeas corpus directing [Mr. Gaulsh] to immediately release [L.G.] to [Ms. Mascioli's] care and custody." It was later learned that on November 13, 2020, Mr. Gaulsh and L.G. flew from Newark, New Jersey to Copenhagen, Denmark.

The Government filed the instant complaint on May 14, 2021, charging Mr. Gaulsh with one count of International Parental Kidnapping, 18 U.S.C. §§ 1204(a). Ms. Mascioli sought the return of L.G. to the United States under the Hague Convention before the Copenhagen City Court. The City Court ordered the return of L.G. to Ms. Mascioli on June 4, 2021, and the City Court's order was affirmed by the Eastern High Court on October 14, 2021.

On October 25, 2021, the Serbian government arrested Mr. Gaulsh as he traveled across the Hungarian-Serbian border with L.G.. L.G. was returned to Ms. Mascioli in the United States and Mr. Gaulsh was kept in custody from October 25, 2021 to May 2022 while the Serbian government determined whether they would extradite him to the United States. The Serbian government ultimately declined to extradite Mr. Gaulsh and released him in May 2022. Mr. Gaulsh returned to his home country, Denmark, after being released and has lived there ever since.

No indictment has ever been filed. An initial motion to dismiss was filed on September 13, 2022. Dkt. No 6. Mr. Gaulsh had a change of counsel on June 28, 2024. Dkt. No. 12. The instant motion to dismiss, filed by Mr. Gaulsh's subsequent and current counsel, was filed on September 27, 2024.

2

**DISCUSSION**

I.   **Fugitive Disentitlement**

As a threshold matter the Court must consider whether the fugitive disentitlement doctrine applies to Mr. Gaulsh's motion to dismiss. The Government, citing the doctrine, argues that the Court should not consider Mr. Gaulsh's motion on its merits because Mr. Gaulsh is a "constructive-flight fugitive" who "refuses to appear for proceedings in this case and face the charges." Dkt. No. 24 at 7, 12. In response, Mr. Gaulsh argues that he is not a constructive-flight fugitive, and "even if he [was], precluding him from advancing his legal challenges would not serve the doctrine's objectives." Dkt. No. 25 at 2.

Under the fugitive-disentitlement doctrine, a court may decline to consider the claims of a defendant who it deems a fugitive from justice. United States v. Bescond, 24 F.4th 759, 764 (2d Cir. 2021). To determine whether the doctrine applies requires two steps. First, the Court must consider whether Mr. Gaulsh is a "fugitive." Bescond, 24 F.4th at 764. If so, the Court next considers whether to exercise its discretion to disentitle Mr. Gaulsh from a judicial determination of his claims if doing so serves the purposes of the doctrine. United States v. Bardakova, No. 22-CR-518 (PKC), 2024 WL 3538969 at *2 (S.D.N.Y. July 24, 2024) (citing Bescond, 24 F.4th at 771).

   **A. Whether Mr. Gaulsh is a "fugitive"**

There are two categories of "fugitive" under the common law. Bescond, 24 F.4th at 771. The first category, "traditional fugitives," are persons "who, having committed a crime, flees the jurisdiction of the court where a crime was committed or departs

3

from his usual place of abode and conceals himself within the district." Id. (citing Finkelstein, 111 F.3d at 281). The second category, "constructive-flight fugitives," are persons "who allegedly committed crimes while in the United States but who [were] outside the country—for whatever reason—when [they] learned that their arrest was sought and who then refused to return to the United States in order to avoid prosecution." Id. at 772 (citing Collazos v. United States, 368 F.3d 190, 199 (2d Cir. 2004)).

The Government asks this Court to find that Mr. Gaulsh is a constructive-flight fugitive. To support their request, they analogize Mr. Gaulsh's actions with the defendant's actions in United States v. Lopez Bello. No. 19-CR-144 (AKH), 2023 WL 3199968, at *1 (S.D.N.Y. May 2, 2023); Dkt. No. 24 at 12. In Lopez Bello, the defendant sought to dismiss an indictment charging him with conspiracy to defraud the United States by obstructing the lawful governmental functions of the Treasury Department's Office of Foreign Assets Control ("OFAC") and the Foreign Narcotics Kingpin Sanctions Regulations. Id., at 1. The Government in Lopez Bello asked the court to decline considering the defendant's motion under the fugitive disentitlement doctrine. Id. The Lopez Bello court held that the defendant was a constructive flight fugitive because, prior to being sanctioned by OFAC, the defendant "lived in the United States with the intention of making it his permanent home." Id. This included enrolling his children in U.S. schools, owning property in the U.S., and "living a luxurious life" in the U.S." Id.

4

The Government argues that Mr. Gaulsh, similar to the "fugitive" defendant in Lopez Bello, showed an intention of making the United States a permanent home because he resided and worked in the United States for years before and after L.G. was born, L.G. went to school in the United States, and Mr. Gaulsh applied for United States citizenship. Dkt. No. 24 at 12 (citing United States v. Lopez Bello, No. 19-CR-144 (AKH), 2023 WL 3199968, at *1 (S.D.N.Y. May 2, 2023)). According to the Government, Mr. Gaulsh became a fugitive the evening "he was required to relinquish [L.G.] to [Mascioli] for extended visitation" and "fled the country with [L.G.], thereby triggering the charge at the issue here." Dkt. No. 24 at 13.

Mr. Gaulsh makes several arguments to support his claim that he is not a constructive-flight fugitive. Dkt. No. 25 at 2. First, he argues that he does not fit within the Second Circuit's definition of a constructive-flight fugitive, which is one who "allegedly committed crimes while *in* the United States but who was outside the country—for whatever reason—when [he] learned that [his] arrest warrant was sought and who then refused to return to the United States in order to avoid prosecution." Dkt. No. 25 at 2-3 (quoting Bescond, 24 F.4th at 772) (emphasis added). Mr. Gaulsh argues he does not fit within this definition because he never committed an alleged crime "while *in* the United States," as the alleged crime and his knowledge of the arrest warrant both occurred *outside* the United States. Dkt. No. 25 at 3. This argument is premised on the unique aspect of Mr. Gaulsh's charged crime, international parental kidnapping, which is only complete once the accused is outside of the country. Id.

In support of his argument, Mr. Gaulsh analogizes his case to <u>United States v. Cornelson</u>, where the court declined to use the fugitive disentitlement doctrine. No. 15-CR-516 (JGK), 595 F. Supp. 3d 265 (S.D.N.Y. 2022); Dkt. No. 26 at 1. Like the defendant in <u>Cornelson</u>, Mr. Gaulsh "committed the alleged crime[] abroad, did not flee from the United States, did not conceal himself, and had no obligation to enter the United States to face arrest," and therefore, he does not meet the definition of fugitive. Dkt. No. 26 at 1 (quoting <u>Cornelson</u>, 595 F. Supp. 3d at 271.

Given the unique aspect of the crime Mr. Gaulsh is accused of, International Parental Kidnapping, the Court finds that Mr. Gaulsh is not a "fugitive" for purposes of the fugitive disentitlement doctrine. Mr. Gaulsh's alleged crime cannot occur *inside* the United States. It is only complete once he and L.G. are *outside* the United States. <u>See</u> 18 U.S. Code § 1204 ("Whoever removes a child from the United States, or attempts to do so, or retains a child (who has been in the United States) outside the United States with intent to obstruct the lawful exercise of parental rights…"); <u>United States v. Miller</u>, 808 F.3d 607, 618 (2d Cir. 2015) ("[L]eaving the jurisdiction of the federal government and crossing the international boundary of the United States—is the essential conduct element."). Mr. Gaulsh was not in the United States at the time he was charged. He left on November 13, 2020 and was charged on May 14, 2021. Dkt. No. 25 at 3. Mr. Gaulsh did not conceal himself, he simply remained in Denmark, his home country. <u>See</u> <u>Cornelson</u>, 595 F. Supp. 3d at 271 ("The fugitive disentitlement doctrine should not be used to penalize defendants for staying home" in a country they are a citizen of and "entitled to reside" and "remain" in); <u>Bescond</u>,

6

24 F.4th at 772 (If one simply remains in their home country, as their "home country permits" them to do, they do not qualify as a constructive-flight fugitive.).

### B. Whether disentitlement would serve the purposes of the doctrine

Additionally, disentitlement would be improper in Mr. Gaulsh's case because it would not serve the purposes of the doctrine. The fugitive-disentitlement doctrine serves four purposes: (1) assuring the enforceability of any decision that may be rendered against the fugitive; (2) imposing a penalty for flouting the judicial process; (3) discouraging flights from justice and promoting the efficient operation of the courts; and (4) avoiding prejudice to the other side caused by the defendant's escape." Bescond, 24 F.4th at 773-4 (quoting Empire Blue Cross & Blue Shield v. Finkelstein, 111 F.3d 278, 280 (2d Cir. 1997)). When considering disentitlement, a court exercises their discretion with these four objectives in mind. Id. at 774 (quoting Finkelstein, 111 F.3d at 280).

#### 1. "Assuring the enforceability of any decision that may be rendered against the fugitive."

The Government argues that this purpose would be served because "[t]his is a case in which if the Court were to determine that defendant's motion to dismiss is without merit and he maintains his unwillingness to return to face the indictment, then nothing will have been achieved." Id. at 13-14 (citing United States v. Khaimov, No. 08-CR-74 (BMC), 2024 WL 2054897, at *2 (E.D.N.Y. May 8, 2024)). In response, Mr. Gaulsh argues that the Government's legal premise "is flawed," because a decision against him in the instant motion, which would uphold the validity of the

7

complaint and arrest warrant, would be enforceable in his absence from the United States. Dkt. No. 25, at 4 (citing United States v. Hayes, No. 12-MJ-3229 (JCF), 99 F. Supp. 3d 409, 416 (S.D.N.Y.), aff'd on other grounds, 118 F. Supp. 3d 620 (S.D.N.Y. 2015)).

Disentitling Mr. Gaulsh would not substantially advance the enforceability of a decision that may be rendered against him. When considering this purpose, Courts are concerned with ensuring "mutuality in litigation," where a defendant wanting the United States to be bound by a decision should also be similarly willing to bear the consequences of an adverse decision. Cornelson, 595 F. Supp. 3d at 272. Mr. Gaulsh would indeed bear the consequences of an adverse decision. Like the defendant in Cornelson, where the court declined to apply the doctrine, Mr. Galush is unable to leave Denmark without the very real risk of being extradited to the United States. Id. ("Such a decision would make it [']very risky['] for him to leave Brazil given INTERPOL'S [']long arm.[']"). Like the defendant in Cornelson, Mr. Galush is unable to return to the United States to visit his child without the risk of being arrested at the border. Id. ("Naturally he could never travel to the United States, because the Department of Justice could place a border watch for him (if it has not already done so).").

### 2. "Imposing a penalty for flouting the judicial process."

The Government argues that this purpose would be served because Mr. Galush flouted the process by "not just leaving the United States with the [c]hild but also remaining in Denmark even upon learning of the federal charge against him and

8

attempting to flee further to Serbia upon losing the proceedings held under the Hague Convention." Dkt. No. 24 at 14. In response, Mr. Galush argues that the Government's application of this purpose is overinclusive because every fugitive refuses to appear in court. Dkt. No. 25 at 5.

Disentitlement is not necessary to punish Mr. Gaulsh for "flouting the judicial process," because he did not flout the judicial process. When considering this purpose, Courts are concerned with punishing a fugitive for exhibiting disrespect for the laws of the United States. Bescond, 24 F.4th at 768. Mr. Gaulsh did not exhibit disrespect; he simply remained at his home country of Denmark and did not return to the United States. Additionally, to find otherwise would indeed be an overly broad application of this purpose. United States v. Hayes, No. 12-MJ-3229 (JCF), 99 F. Supp. 3d 409, 417 (S.D.N.Y.), aff'd on other grounds, 118 F. Supp. 3d 620 (S.D.N.Y. 2015) (If "mere absence constituted flouting the judicial process, this factor would always favor the prosecution, and no further analysis would be necessary.").

### 3. "Discouraging flights from justice and promoting the efficient operation of the courts."

The Government argues that this purpose would be served because it would "disincentivize defendants from departing from the United States in violation of U.S. law and remaining abroad once the individual's conduct on U.S. soil is the subject of law enforcement inquiry." Dkt. No. 24 at 14. In response, Mr. Galush argues that the facts of his case are particularly unique and cannot serve as an example to discourage "flights from justice" for other defendants. Dkt. No. 25 at 6.

9

This purpose would not be served by the Court declining to consider the merits of Mr. Gaulsh's motion given the distinctiveness of the instant case. His alleged crime was not completed until he was outside the United States. Similarly, Mr. Gaulsh was outside the United States when the Government filed their complaint initiating the case. His story does not serve as inspiration to would be fugitive defendants.

### 4. "Avoiding prejudice to the other side caused by the defendant's escape."

The Government argues that this purpose would be served because "permitting [Mr.] Gaulsh to challenge the Complaint would exacerbate the prejudice to the Government already endangered by [Mr.] Gaulsh's knowing refusal to submit to the Court's jurisdiction[.]" Dkt. No. 24 at 15. In response, Mr. Galush argues that the Government "fails to cite to any prejudice that impacts the actual prosecution of their case, such as the fading of witness memories." Dkt. No. 25 at 6.

Disentitling Mr. Gaulsh is not needed to avoid prejudice to the Government. The Government does not provide cognizable prejudice that they have suffered from Mr. Galush's absence. In fact, the Government's actions show no urgency to prosecute the case against Mr. Galush. Mr. Gaulsh has yet to be indicted or extradited in the three years since he returned to Denmark and L.G. has already been reunited with Ms. Mascioli. Hayes, 99 F. Supp. 3d at 418 (finding that without a timely indictment the purpose of "avoiding prejudice" is not supported.); Bardakova, 2024 WL 3538969 at *3 (Finding the purpose of "avoiding prejudice" is supported when the Government "promptly filed the indictment" to mitigate evidence going stale.).

10

Given the findings discussed above, the Court does not exercise its discretion to apply the fugitive disentitlement doctrine to Mr. Gaulsh's claim.

## II. Motion to Dismiss

Mr. Gaulsh makes three arguments in support of dismissing the Government's complaint. First, he argues that dismissal is warranted because the facts alleged in the Government's complaint fail to establish probable cause. Dkt. No. 21 at 5. Second, he argues that dismissal is warranted because he suffered a violation of his Sixth Amendment right to a speedy trial. Id. Third, he argues that dismissal is warranted under Fed.R.Crim.P 48(b) because the Government engaged in unnecessary prosecutorial delay. Id.

### A. Sixth Amendment

For reasons that will be readily apparent, the Court will first consider Mr. Gaulsh's second argument, that the Court should dismiss the Government's complaint due to their alleged violation of his Sixth Amendment right to a speedy trial. Dkt. No. 21 at 20. The parties do not contest whether that right has been triggered in this case, as it occurred when the Government filed their complaint against Mr. Gaulsh on May 14, 2021. Dkt. No. 1 at 2. U.S. v. Moreno, 789 F.3d 72, 78 (C.A.2,2015) (The right to a speedy trial is triggered by arrest, indictment, or other official accusation.). With the right in effect, the parties disagree as to whether it was violated.

The right to a speedy trial protects the accused's interest in a decent and fair procedure and the public's interest in a speedy adjudicative system. Barker v. Wingo,

11

407 U.S. 514, 519, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Because the right is a "more vague concept than other procedural rights," whether it has been violated is analyzed with the help of Barker's four factor test: (1) length of delay; (2) the reason for the delay; (3) the accused's assertion of their right; and (4) prejudice to the accused. Id. at 521, 530.

The first factor, length of delay, is a "threshold inquiry," where significant delay between the accusatory instrument and trial "triggers an inquiry into the other three Barker factors. United States v. Baker, 2025 WL 1681324, at *2 (C.A.2 (N.Y.), 2025) (quoting United States v. Blanco, 861 F.2d 773, 777 (2d Cir. 1988)). It has been more than four years since the complaint against Mr. Gaulsh was filed. This is a substantial length of delay, longer than other delays which were found sufficient for this factor by the Second Circuit. Flowers v. Warden, 853 F.2d 131, 133 (2d Cir. 1988) (finding a 17-month delay sufficient); U.S. v. Moreno, 789 F.3d 72, 82 n.10 (C.A.2,2015) (finding a 27-month delay sufficient). Additionally, the inquiry into the length of delay is "dependent upon the peculiar circumstances of the case," where the delay "that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." Barker, 407 U.S. at 531. The case against Mr. Gaulsh is relatively simple compared to a "complex conspiracy," as it is a single count of International Parental Kidnapping. This factor weighs in favor of Mr. Gaulsh.

When considering the second factor, the "reason the [G]overnment assigns to justify the delay," a "deliberate attempt to delay" is weighted heavily against the Government, "negligence or overcrowded courts" is weighed less but "nevertheless

12

should be considered since the ultimate responsibility" rests with the Government rather than the accused. Id. at 531. The Government argues that Mr. Gaulsh's "conduct in evading apprehension is the reason for the delay." Dkt. No. 24 at 22. In response, Mr. Gaulsh argues that the Government has known his whereabouts for the entirety of this case. Dkt. No. 25 at 13. The Government characterizes Mr. Gaulsh remaining in Denmark as evasion, but Mr. Gaulsh returned to Denmark in November 2020 and the Government's case was initiated on May 14, 2021. Mr. Gaulsh is simply remaining in his home country, "living openly under his own name, and stayed within the law." Doggett v. U.S., 112 S.Ct. 2686, 2689, 505 U.S. 647, 649 (1992). The Government is "under an obligation to exercise due diligence in attempting to locate and apprehend the accused." U.S. v. Moreno, 789 F.3d 72, 79 (C.A.2,2015) (quoting Rayborn v. Scully, 858 F.2d 84, 90 (2d Cir.1988)). Even if the accused has fled to "avoid capture or prosecution, the government can still be at fault for delay if they failed to use []reasonable diligence[] … and thereby lengthened the delay." United States v. Cabral, 979 F.3d 150, 158 (2d Cir. 2020).

Here, the Government has failed to exercise due diligence, and their negligence is the cause of the more than four-year delay. Id. at 80 (Negligent prosecution "does not weigh in favor of the [accused] unless it actually lengthened the delay."). The Government provides no valid justification for their failure to indict or extradite Mr. Gaulsh for more than four years despite an extradition agreement between the United States and Denmark existing. Denmark Int'l Treaty with the United States art. 17, Jun. 23, 1972, 25 U.S.T. 1293, TIAS 7864; U.S. v. Broe, 695 F.Supp.2d 1361,

13

1363 (S.D.Fla.,2010) (discussing the extradition treaty between Denmark and the United States). Additionally, the failure is to extradite Mr. Gaulsh is inexcusable as the treaty simply requires:

> "description of the person sought, information as to his nationality and residence if available, a statement of the facts of the case, the text of the applicable laws of the requesting State including the law defining the offense, the law prescribing the punishment for the offense, and a statement that the legal proceedings or the enforcement of the penalty for the offense have not been barred by lapse of time."

Instrument As Contemplated by Article 3(2) of the Agreement on Extradition Between the United States of Am. & the Eur. Union Signed 25 June 2003, As to the Application of the Treaty on Extradition Between the U, T.I.A.S. No. 10-201.6 (Feb. 1, 2010). This "often critical" factor weighs heavily in favor of Mr. Gaulsh. Id. at 79.

For the third factor, the accused's responsibility in asserting their right, the Court must consider "the strength of [the accused's] efforts." Barker, 407 U.S. at 531. An accused's "assertion of [their] speedy trial right … is entitled to strong evidentiary weight in determining whether the accused is being deprived of the right." Id. at 531-32. Conversely, "[f]ailure to assert the right will make it difficult for [the accused] to prove that [they were] denied a fair trial." Id. Mr. Gaulsh retained counsel and initially moved to dismiss this case on September 13, 2022, where he asserted a violation of his right to a speedy trial. Dkt. No. 6 at 46. This factor weighs in favor of Mr. Gaulsh.

For the fourth factor, "prejudice to the accused," the Court must consider the interests of the accused "which the speedy trial right was designed to protect." Barker, 407 U.S. at 532. These interests include: "(i) to prevent oppressive pretrial

incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Id. The Government's focus centers solely on the third interest, and argues that Mr. Gaulsh cannot establish prejudice because their case can be "corroborated through, among other things, court orders and flight records." Dkt. No. 24 at 23-24. It is true that "limiting the possibility that the defense will be impaired" is "the most serious" interest as "the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Barker, 407 U.S. at 532. However, "negligence [is not] automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him." Doggett, 505 U.S. at 657. Mr. Gaulsh's arguments concern the first two interests and the Government does not contest these arguments. It is clear that the first interest is implicated here, Mr. Gaulsh was in Serbian custody for approximately seven months as a result of this case. It is also clear that the second interest is implicated here, Mr. Gaulsh "has endured tremendous anxiety by remaining in limbo" for more than four years as a result of this case, unable to travel and visit his son. Dkt. No. 25 at 14. This factor weighs in favor of Mr. Gaulsh.

When considering the Barker factors, "no one factor is necessary or sufficient to find a deprivation of the right to a speedy trial," all four factors "must be considered together with such other circumstances as may be relevant." Moreno, 789 F.3d at 78. All factors weigh in favor of Mr. Gaulsh. The Government cannot satisfy its Sixth Amendment obligation to provide Mr. Gaulsh with a speedy trial. Dismissal with prejudice is the "only possible remedy" to the violation of Mr. Gaulsh's right. Barker,

407 U.S. at 522. It is "indeed a serious consequence," but it cannot be used to excuse the Government's failure to prosecute their case with reasonable diligence, otherwise the right to a speedy trial is meaningless. <u>Id.</u> Accordingly, the Government's complaint against Mr. Gaulsh must be dismissed.

### B. Probable Cause and Fed.R.Crim.P 48(b)

Given the Court's ruling on Mr. Gaulsh's second argument, the Court need not reach his arguments concerning probable cause and Fed.R.Crim.P 48(b).

### CONCLUSION

For the aforementioned reasons, Mr. Gaulsh's motion to dismiss the Government's complaint and quash his arrest warrant is **GRANTED**.

**The Clerk of Court is respectfully requested to close Dkt. No. 20.**

SO ORDERED.

DATED:   New York, New York
         September 23, 2025

*Jennifer E. Willis*
JENNIFER E. WILLIS
United States Magistrate Judge